The STATE of Ohio, Appellee,

v.

MIRMOHAMED, Appellant.

[Cite as *State v. Mirmohamed* (1998), 131 Ohio App.3d 579.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA11–1492.

Decided Dec. 3, 1998.

*Ron O'Brien*, Franklin County Prosecuting Attorney, for appellee.

*Tyack, Blackmore & Liston Co., L.P.A., Thomas M. Tyack* and *Jonathan T. Tyack*, for appellant.

PETREE, Judge.

After dark on the evening of January 17, 1997, Rafik Mirmohamed and his co-defendant, Christopher Graham, entered an Amoco service station in Dublin, Ohio armed with a loaded Smith & Wesson .357 magnum revolver. Prior to entering the station, the two went to a nearby Sunoco where they purchased a pair of gloves. Each defendant took one glove from the pair and parked Graham's red Honda Prelude on a side street a short distance behind the Amoco station. Defendants then left Graham's car and waited until no one but the station attendant, Larry Teets, was present. Seeing their opportunity, defendants covered their faces with their shirts and approached the front of the station. Mirmohamed entered the station first and aimed the loaded revolver at Larry Teets. According to Mirmohamed, Teets reached for the revolver causing the gun to fire into his chest. As a result of the gunshot, Teets was killed.

Mirmohamed, a minor, was ultimately bound over for trial as an adult. On March 5, 1997, Mirmohamed was indicted and charged with one count of aggravated murder and one count of aggravated robbery. On September 24, 1997, Mirmohamed appeared before the trial court, withdrew his previously entered pleas of not guilty, and pled guilty to the crimes of involuntary manslaughter in violation of R.C. 2903.04, and aggravated robbery in violation of R.C. 2911.01. Defendant also pled guilty to the gun specifications associated with both charges.

At defendant's request, the court postponed sentencing in order to allow defense counsel an opportunity to gather and present mitigating evidence. On or about October 28, 1997, two days prior to sentencing, defense counsel filed a memorandum with the court which raised for the first time defendant's claim that the offenses of involuntary manslaughter and aggravated robbery merged for purposes of sentencing. In that memorandum, defendant asserted that the offenses to which he pled guilty were "allied offenses of similar import" such that the trial court was permitted to sentence defendant to a maximum of only thirteen years. The state vehemently disagreed with defendant's argument, and the trial court eventually stated that it was willing to allow defendant to withdraw his plea. However, after a lengthy discussion on the record, and with the consent of both parties, the court agreed to proceed with the sentencing hearing in order to make a factual and legal determination on defendant's merger claim.

During that hearing, the court considered various exhibits and information presented by the parties. At the conclusion of the hearing, the court determined that merger did not apply to the facts of the case and sentenced defendant to ten years for involuntary manslaughter, ten years for aggravated robbery, and three years on the gun specifications. The court ordered each sentence to be served consecutively, for a total of twenty-three years. Defendant now appeals, raising the following assignments of error:

"I. Counts I and II, Aggravated Robbery and Involuntary Manslaughter, merge pursuant to 2941.25 Revised Code. The Trial Court erred by entering judgment and sentencing the defendant to consecutive terms of imprisonment on both counts.

"II. The Trial Court, having failed to find the existence of the mandatory factors required by 2929.14(E)(3) Revised Code, erred in imposing consecutive sentences as to aggravated robbery and involuntary manslaughter premised on the aggravated robbery."

■ In his first assignment of error, defendant argues that aggravated robbery and involuntary manslaughter are allied offenses of similar import. R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each,

the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In *State v. Jones* (1997), 78 Ohio St.3d 12, 676 N.E.2d 80, the Ohio Supreme Court reaffirmed the applicability of the two-part analysis set forth in *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816, to determine whether merger is appropriate pursuant to R.C. 2941.25. The court stated:

"To determine whether merger was appropriate pursuant to R.C. 2941.25 requires us to engage in a two-step analysis. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816. 'In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step.' * * *

" 'In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.' (Emphasis *sic.*) 38 Ohio St.3d at 117, 526 N.E.2d at 817." *Jones* at 13–14, 676 N.E.2d at 81.

As noted, the trial court separately sentenced defendant for aggravated robbery in violation of R.C. 2911.01(A)(1), and involuntary manslaughter in violation of R.C. 2903.04. Prior to doing so, the court concluded under the first prong of *Blankenship* that the elements of the two crimes did not correspond to such a degree that the commission of one will necessarily result in the commission of the other. Although the court had found against defendant on the first prong of the analysis, it went on to conclude under the second prong of the *Blankenship* test that the two crimes had been committed separately and with a separate animus for each.

While the parties disagree as to the legal correctness of the trial court's finding in regard to the first element of the *Blankenship* analysis, as noted, the court also found that the second element of the test had been satisfied. Therefore, assuming, without deciding, that the trial court was incorrect in this instance in concluding that the elements of the two offenses committed by defendant did not correspond to such a degree that the commission of one resulted in the commission of the other, because we find that the trial court correctly found that the two crimes had been committed separately, we affirm the judgment rendered by the court.

At the sentencing hearing, the trial court found that the offense of aggravated robbery had been completed when defendant entered the Amoco station armed with a revolver in order to commit a theft. See *State v. Frazier* (1979), 58 Ohio

St.2d 253, 12 O.O.3d 263, 389 N.E.2d 1118, in which the Ohio Supreme Court held that entry with intent to commit a theft was sufficient to complete the offense of burglary.

Conversely, the court found that defendant had committed manslaughter as a proximate result of defendant having aimed and fired a loaded weapon at the victim's chest. This finding was supported by the report rendered by William B. Mark, forensic scientist with the Bureau of Criminal Identification and Investigation, and Charles A. Guinther, Jr., senior analytical chemist with S.E.A., Inc. Both experts concluded that the firearm that killed Larry Teets was in proper operating condition, would not fire accidentally, and could only be fired by exerting three and one-half pounds of force on the trigger in single action, and eleven pounds of force in double action.

Having reviewed the matter, we do not believe that the trial court erred when it concluded that defendant had separately committed the crimes of aggravated robbery and involuntary manslaughter. Accordingly, defendant's first assignment of error is overruled.

In his second assignment of error, defendant maintains that the trial court erred when it ordered him to serve his sentences consecutively. Initially, we note that trial courts have broad discretion when sentencing within the statutory guidelines. *State v. Cassidy* (1984), 21 Ohio App.3d 100, 102, 21 OBR 107, 108–109, 487 N.E.2d 322, 323. However, in order for a court to order a defendant to serve consecutive sentences, it must first comply with the requirements of R.C. 2929.14(E)(3). R.C. 2929.14 provides:

"(E)(3) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

■ In this case, defendant argues that the trial court failed to place on the record findings in compliance with R.C. 2929.14(E)(3) that would support the imposition of consecutive sentences. In response, the state notes that this court has previously held, in *State v. Fincher* (Oct. 14, 1997), Franklin App. No. 97APA03–352, unreported, 1997 WL 638410, that "talismanic" words or incantations are not required from courts in order to comply with the provisions of R.C. 2929.14. See, also, *State v. Koogler* (Sept. 15, 1998), Franklin App. No. 98AP–219, unreported, 1998 WL 635303; *State v. Curtis* (Feb. 10, 1998), Franklin App. No. 97APA07–909, unreported, 1998 WL 63541; and *State v. Radcliff* (Mar. 17, 1998), Franklin App. No. 97APA08–1054, unreported, 1998 WL 120304.

■ Although we agree that trial courts need not recite "talismanic" words when imposing criminal sentences, we note that our holding in *Fincher* does not relieve the trial court from its obligation to comply with the statutory sentencing requirements. That is to say, the mere assertion by the trial court that it has reviewed the factors and provisions set forth in R.C. 2929.11 to 2929.14 is not in itself sufficient finding on the record of the court's reasoning in determining its sentence. For example, in *Fincher*, we found that the trial court, in addition to noting that it had weighed and considered the factors under R.C. Title 29, had made detailed statements at the sentencing hearing indicating the reasons for imposing a maximum sentence. Accordingly, we were readily able to determine that a sufficient factual basis existed to support the sentence imposed by the court.

Although its findings were not clearly organized, in this case a search of the record reveals that the trial court has met the basic requirements of placing its findings on the record. At the sentencing hearing held on October 30, 1997, the court stated on the record the following:

"I've read everything you've given me, I understand all the mitigating and all that, but there's nothing that mitigates against running around planning a deal, walking into a gas station with a gun, putting a gun in a guy's chest and killing him, a planned aggravated robbery." R.C. 2929.14(E)(3).

The court continued:

"To me, an analysis of the facts of this case is it was clearly an aggravated robbery planned. I mean, we have the mask, the riding around, the night season, the obtaining and loading of a weapon for the purpose of committing the robbery, the—all of these separate acts clearly indicating that there was an attempt to commit—and the statements of the participants, as on record to the police, that this was the intent to commit an aggravated robbery. R.C. 2929.14(E)(3).

" * * *

"If there was a struggle, if there was a struggle for the weapon between the victim and the Defendant * * * the evidence before this Court, there was not contact between the two at the moment of the firing. Whether there had been a struggle, that weapon either had been pulled away successfully by the Defendant * * * it was freely in the hand of the Defendant at the time that, at least 3-1/2 pounds or 11 pounds of pressure was exerted against that trigger directly into the victim's chest. * * *

"It appears to me that there is sufficient facts surrounding the shooting to convince this Court it was a separate act and one for which the Defendant has pled guilty and is responsible. * * * I believe there's a separate animus when you pull out a .357 magnum and put it in someone's chest and pull the trigger, that there is an intent when you are engaged in that act to shoot.

"* * *

"I think contrary to what [Defense counsel] says, this is the first time the man has said he's sorry for this offense. The Defendant, if he gets the max. of 23, will be 40 when he gets out. At that time the victim will have been in the ground for 23 years. That's a little solace to the victim or his family.

"I think contrary to what [Defense counsel] has said, too, we've heard nothing but self-serving statements from day one about his conduct in this crime. [R.C. 2929.14(E)(3)(b).] He does have a prior juvenile record, he was arrested for auto theft in southern Ohio, he was put on probation. While he was out on bond on this offense he was arrested for a new felony, although it was dismissed. I think, obviously, the Court's aware that he had pled in these cases and was going to have a substantial prison sentence here, so it's not surprising to me that last week they dismissed the case. [R.C. 2929.14(E)(3)(c).]

"I think that when you read the psychological report, like we have in many of these cases, people are using excuses for their serious and violent crimes * * * someone who arms himself with this kind of gun * * * points it at somebody's face and kills them should go to prison for 23 years and that's the sentence the State of Ohio is asking." [R.C. 2929.14(E)(3).]

Pursuant to R.C. 2953.08(G), an appellate court may not disturb a sentence imposed under Senate Bill No. 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. While we would have preferred the trial court to itemize or clearly organize the reasons for imposing consecutive sentences, in this instance the record shows the court did consider the need to protect the public and to punish defendant given the nature and severity of the offenses committed. Additionally, the court's remarks show that the court felt that the harm caused by the multiple offenses was so great that no single prison term would adequately reflect the seriousness of defendant's

conduct. Upon examination, we conclude that this matter fits within the rule of law established in the *Fincher* case. Therefore, defendant's second assignment of error is overruled.

For the foregoing reasons, we hereby overrule defendant's assignments of error and affirm the judgment and sentence imposed by the Franklin County Court of Common Pleas.

*Judgment affirmed.*

PEGGY BRYANT, J., concurs.

DESHLER, P.J., concurs in part and dissents in part.

DESHLER, Presiding Judge, concurring in part and dissenting in part.

While I agree with the majority decision generally, I dissent from the majority's conclusion that the trial court complied with the sentencing requirements of R.C. 2929.14.

Defendant has argued that the trial court failed to make specific findings relating to factors affecting felony sentences where consecutive sentences are imposed. The majority relies upon a previous decision of this court, *State v. Fincher* (Oct. 14, 1997), Franklin App. No. 97APA03–352, unreported, 1997 WL 638410, to conclude that the trial court in the instant case complied with the various sentencing mandates of the Revised Code. The majority cites the trial court's entry, which stated: "On October 30, 1997, a sentencing hearing was held pursuant to R.C. 2929.19. * * * The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14."

The language of the trial court, as in this case where consecutive sentences are imposed, does not comply with the specific mandate of R.C. 2929.19(B)(2)(c), which states:

"(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:

" * * *

" "(c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]"

I do not agree with this court's earlier decision in *Fincher*, relied upon by the majority, even though it involved a maximum sentence as opposed to consecutive sentences. The conclusion by the majority that general references to sentencing statutes by the trial court is sufficient compliance with the statutory command has been treated differently by various courts of appeals in this state. However,

a number of decisions have held that when the trial court imposes a maximum sentence or consecutive sentences, the court must provide specific reasons on the record for the imposition of such a sentence. See *State v. Reynolds* (Sept. 16, 1998), Wayne App. No. 97CA0080, unreported, 1998 WL 646748; *State v. McAdams* (Aug. 28, 1998), Hamilton App. No. C–970998, unreported, 1998 WL 542809; *State v. Garcia* (Mar. 2, 1998), Clermont App. No. CA97–04–042, unreported, 1998 WL 87568; and *State v. Phillips* (Sept. 16, 1998), Summit App. No. C.A. No 18194, unreported, 1998 WL 646743.

As opposed to the reasoning in *Fincher*, I believe that the better view is that the trial court should specifically state the reasons for the sentence in the sentencing entry when either a maximum sentence is imposed or consecutive sentences are involved. This leaves no doubt with respect to the reasoning of the court as the basis for the sentence. This literal compliance with the statutes also provides the court of appeals, upon any review of the sentence, with an adequate and complete basis for understanding the reasoning of the trial court. Having been a trial judge, I can sympathize with the trial court's burden of dealing regularly with the bewildering array of sentencing factors and mandates imposed by the legislature. And while some of our earlier decisions appear to give the trial court considerable leeway in sentencing, as long as there is some reference in the record to the court's reasons, I believe it is time that we recognize the literal mandates of the statutes and attempt to bring uniformity to the sentencing procedures of the trial courts. In short, the trial court must comply with the statute, regardless of the burden it imposes. I would, therefore, remand this case to the trial court for resentencing of defendant in accordance with R.C. 2929.19(B) and 2929.14(E).