DECISION AND JUDGMENT ENTRY
{¶ 1} Paul V. Remy appeals his conviction in the Ross County Court of Common Pleas on one first-degree felony count of possession of cocaine, a violation of R.C. 2925.11. Remy asserts ten assignments of error. Because we find that each of Remy's assignments of error is without merit, we overrule his assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} On November 6, 2001, Captain James Calhoun swore in an affidavit that several informants provided tips that Paul Remy was selling crack-cocaine from Paul's Motor Sales, that law enforcement discovered cocaine in several traffic stops of vehicles leaving Paul's Motor Sales, that law enforcement discovered cocaine in Remy's vehicle during several traffic stops, and that a reliable confidential informant provided information that they were a past employee of Paul's Motor Sales and had observed cocaine, crack-cocaine, and marijuana being sold at Paul's Motor Sales. Based on this information, Judge Bunch of the Chillicothe Municipal Court issued a search warrant of 95 South Renick Avenue, Chillicothe, Ohio, where Paul's Motor Sales is located.
 {¶ 3} Although the court issued the journal entry for the warrant on November 6, 2001, the court failed to fill in the blank for the day of November 2001 that the matter came before it for consideration. In the first line of the journal entry, the court stated that it was issuing the warrant to Ross County Sheriff Ron Nichols.
 {¶ 4} Remy owns the property located at 95 South Renick Avenue. His daughter, Diane Barnett, is the president and chief operating officer of Paul's Motor Sales. The property consists of a car lot with over 200 vehicles, a customer parking area, and a building with offices and a bedroom.
 {¶ 5} Members of the Ross County Sheriff's Department, led by Captain Calhoun, and members of the Chillicothe Police Department, led by Detective James Lowe, executed the warrant on November 6, 2001. Sheriff Ron Nichols was not present. When the law enforcement officers arrived, they found the business unlocked and entered through the front door. Remy and several other people were present when officers arrived. Officers detained the individuals in one room during the execution of the warrant. One of the people present, Hank Spencer, has a felony record for drug trafficking.
 {¶ 6} Detective Lowe discovered that one door was locked. Rather than damage the door, he asked the people present if any of them had a key to the room. Remy stated that he had a key to the room and that it was his bedroom. Remy unlocked the door for the officers. Inside the locked bedroom officers found crack-cocaine on the nightstand, in the dresser, in the bed, under the mattress, in a bathrobe pocket, and in the suspended ceiling. They also found certificates of deposit in Remy's name with a value of $160,000.
 {¶ 7} After the drugs were discovered in Remy's bedroom, officers removed him from the building and placed him under arrest. He received Miranda warnings, orally indicated that he understood his rights, signed a waiver of rights form, and gave a statement. During his statement, Remy said that the bedroom was his, and that no one else had a key to the bedroom. When asked about the cocaine in the room, Remy stated that he had five or six women running in and out of his bedroom at all hours of the night.
 {¶ 8} When officers searched Remy, they found a large amount of cash and a metal capsule containing a small amount of cocaine powder residue. Additionally, officers found a small amount of cocaine in Remy's truck.
 {¶ 9} The warrant authorized officers to seize items related to trafficking in drugs, drug abuse, and drug paraphernalia offenses and items related to those offenses, including computers, certificates of deposit, jewelry, currency, bank records, photographs, and video tapes. A laptop computer was among the items seized. Officers later learned that the laptop was stolen.
 {¶ 10} The Ross County Grand Jury indicted Remy for one count of possession of crack-cocaine in an amount greater than twenty-five grams and for one count of receiving stolen property. Remy pled not guilty to the charges and filed a motion to suppress the evidence obtained in the search. The trial court held a hearing on the motion and denied it.
 {¶ 11} The State was initially represented by Assistant Prosecuting Attorney Michael Ater. Michael is married to Jennifer Ater, a former assistant prosecuting attorney. Jennifer represented Remy in an unrelated, non-criminal matter several years before this matter arose. Remy still owes Jennifer money for legal services she rendered on his behalf. Remy filed a motion to cause the entire Ross County Prosecutor's Office to disqualify itself from the case due to a conflict of interest. Meanwhile, Michael Ater was called to active military duty and Ross County Prosecutor Scott Nusbaum took over for the prosecution. The trial court denied Remy's motion, noting that Michael Ater was no longer involved in the matter. Michael Ater represents the State in this appeal.
 {¶ 12} Remy moved for a separation of witnesses during the trial, and the court granted his motion. However, the State designated Detective Lowe as its representative. Therefore, the trial court allowed Detective Lowe to remain in the courtroom and sit at the counsel table throughout the trial. Detective Lowe testified last in the State's case.
 {¶ 13} The State included an individual named Tonya Sue Perry on its witness list and subpoenaed her to testify at trial. Perry did not appear at the trial as ordered. The court issued a warrant for Perry's failure to appear as a witness.
 {¶ 14} During the trial, witnesses and counsel frequently used the terms "cocaine" and "crack-cocaine" interchangeably. The State's expert witness, Keith Taggart, testified that "crack-cocaine" is street terminology for a base form of cocaine created when powder cocaine is mixed with a substance such as baking soda and heated. Taggart specified that the cocaine found in Remy's bed, under his mattress, in his bathrobe, in his dresser, and in the ceiling was the base form of cocaine.
 {¶ 15} In his cross-examination of Detective Lowe, Remy sought to introduce a copy of the journal entry whereby an individual named Hank Spencer was convicted of drug trafficking. The State objected on relevancy grounds. The trial court sustained the State's objection, but stated that it would allow Remy to present evidence of the conviction if he could also present evidence that the Hank Spencer named in the journal entry was the same individual as the Hank Spencer present at Paul's Motor Sales at the time officers executed the search warrant.
 {¶ 16} The State dismissed the receiving stolen property charge. The jury found Remy guilty of possessing cocaine in an amount excess of twenty-five grams. At the sentencing hearing, the trial court found that the shortest available prison term, three years, would demean the seriousness of Remy's conduct. The court ordered Remy to serve a prison term of four years.
 {¶ 17} Remy filed a motion for a new trial due to newly discovered evidence. Remy based his motion on a letter that was placed in the court's mailbox on June 30, 2003, by an unknown source. The court shared the letter with the prosecutor and defense counsel in chambers. The letter contains a confession allegedly from Perry, the State's witness who failed to appear, that the cocaine in his ceiling belonged to her and another woman, Dorothy Spencer. The letter also states that Remy was home when they stashed the cocaine in his ceiling, and that he provided them with the plastic bag to hold the cocaine. Additionally, the letter states that Perry and Spencer informed Remy that the cocaine stashed in the ceiling was theirs approximately four weeks after the November 6, 2001 raid. The trial court denied Remy's motion for a new trial without holding a hearing.
 {¶ 18} Remy appeals, asserting the following ten assignments of error: "I. The trial court committed prejudicial error by failing to sustain [Remy's] motion to cause the Ross County Prosecutor's to disqualify itself for conflict of interest. II. The trial court committed prejudicial error by not sustaining [Remy's] motion to suppress the search warrant and the items seized. III. The jury's verdict is against the manifest weight of the evidence. IV. The trial court committed prejudicial error by not suppressing any statements made by [Remy] in violation of his Miranda rights and which are not provided per Crim.R. 16. V. The trial court committed prejudicial error in not sentencing [Remy] to the statutory minimum sentence. VI. The trial court committed prejudicial error by permitting the jury to consider crack-cocaine and powder cocaine which were not properly qualified and quantified. VII. The prosecutor committed prejudicial error by misleading the jury in final argument. VIII. The trial court committed prejudicial error when it would not allow the defense to introduce the felony record of a witness who was present at the search warrant location. IX. The trial court committed prejudicial error when it allowed a violation of the separation of witness rule. X. The court committed prejudicial error by overruling [Remy's] motion for a new trial without an oral hearing."
 II. {¶ 19} In his first assignment of error, Remy asserts that the trial court committed reversible error when it denied his motion to disqualify the Ross County Prosecutor's office from this case. Remy contends that, at minimum, an appearance of a conflict of interest is present in this case because the assistant prosecutor's wife, Jennifer Ater, previously represented Remy in another matter. Remy reports that he still owes Jennifer Ater several hundred dollars for fees related to her representation of him. Jennifer's husband, Michael Ater, was initially responsible for prosecuting Remy. Michael was called to active military duty and Ross County Prosecuting Attorney Scott Nusbaum conducted Remy's trial. Michael represents the State in this appeal.
 {¶ 20} The trial court noted that Remy does not allege that Jennifer ever represented him in any capacity relating to the charges against him in this case. Remy did not identify what type of matter he consulted with Jennifer about, and did not attempt to identify any confidences or secrets he may have disclosed to Jennifer that could be exploited to the State's advantage in this case.
 {¶ 21} Remy supports his argument that the prosecutor's office should have disqualified itself with the Supreme Court of Ohio Board of Commissioners on Grievances and Discipline's Opinion 93-7. Opinion 93-7 stands for the proposition that "[a]n assistant county prosecutor and a criminal defense attorney who are spouses may not represent opposing parties in a criminal matter." The opinion relates to disciplinary rules for attorneys, not to grounds for reversal of a criminal conviction. The Supreme Court of Ohio has held that, to show that a trial court committed reversible error by failing to require the prosecutor's office to remove itself due to a claimed conflict of interest related to prior representation, the defendant must demonstrate that he suffered some prejudice as a result of the past representation.State v. Sweet (1995), 72 Ohio St.3d 375, 377.
 {¶ 22} Here, spouses are not representing the opposing parties in the same matter. Jennifer's representation of Remy ended before the State brought the current charges against Remy. Thus, the factual situation analyzed in Opinion 93-7 is not analogous to the facts here. Additionally, Remy has not alleged that Jennifer's prior representation of Remy is related in any way to the charges presented in this case. Remy has not shown that he suffered any prejudice as a result of the alleged conflict of interest in this case. Accordingly, we overrule Remy's first assignment of error.
 III. {¶ 23} In his second assignment of error, Remy asserts that the trial court erred in overruling his motion to suppress the search warrant and the items seized during the search. Remy contends that the court issued the warrant without probable cause, that the warrant is faulty, and that law enforcement did not properly execute the warrant.
 A. {¶ 24} To determine whether probable cause exists to support the issuance of a warrant, the issuing judge or magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting and following Illinois v. Gates (1983),462 U.S. 213, 238-239. In reviewing the decision to issue a search warrant, we do not substitute our judgment for that of the issuing authority. Id. at paragraph two of the syllabus. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed * * *. [T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id.
 {¶ 25} While an informant's veracity, reliability, and basis of knowledge are relevant considerations in the totality of the circumstances analysis, they are not to be viewed as rigid requirements that must be demonstrated before a search warrant may be issued. See Gates, 462 U.S. at 230. Rather, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Id.; State v. Raines, Ross App. No. 03CA2739, 2004-Ohio-1915. When an affidavit reveals that a particular informant has successfully assisted the police in the past, it gives a judge an indication of the circumstances upon which he can reach his conclusion that the informant is credible. State v. Wilson, 156 Ohio App.3d 1, 8, 2004-Ohio-144
at ¶ 14, citing State v. Roberts (1980), 62 Ohio St.2d 170.
 {¶ 26} Here, the affidavit supporting the search warrant contained evidence providing a substantial basis for concluding that probable existed. Specifically, a confidential informant who had worked for Paul's Motor Sales informed officers that he or she had seen cocaine, crack-cocaine, and marijuana being used and sold at Paul's Motor Sales by Paul Remy and others. The confidential informant's tip was corroborated by the fact that the confidential informant had provided information in the past that led to felony arrests. Additionally, the confidential informant's tip was corroborated by the fact that the Chillicothe Police Department had made several stops on persons leaving Paul's Motor Sales and found them in possession of crack-cocaine. Thus, we disagree with Remy's contention that the warrant was issued without probable cause.
 B. {¶ 27} Remy contends that the warrant was faulty because, although the warrant required a search within three days as required by R.C. 2933.24 and Crim.R. 41, the date on the journal entry was left blank. Remy also contends generally that the warrant does not comply with R.C. 2933.25, but does not specify how he believes the warrant significantly deviates from the model provided by R.C. 2933.25. Thus, we decline to address this contention. See App.R. 12(A)(2). The State concedes that the omission of the date constitutes an error, but asserts that the error is nonfundamental and does not require suppression of the evidence obtained in the execution of the warrant.
 {¶ 28} Violations of state law that do not rise to the level of constitutional error "are classified as nonfundamental and require suppression only where the search might not have occurred or would not have been as abrasive if the rule had been followed or where there is evidence of intentional and deliberate disregard of the provision in the rule." State v. Morse, Warren App. Nos. CA2001-11-099 and CA2001-11-100, 2002-Ohio-3873 at ¶ 21, citing State v. Wilmoth (1986), 22 Ohio St.3d 251, 263. Where there is no evidence that a search warrant would not have issued without the rule violation and no evidence of bad faith on the part of law enforcement, the exclusionary rule will not apply to evidence seized under a warrant that does not strictly comply with Crim.R. 41 and R.C. 2933.24. Morse at ¶ 22.
 {¶ 29} Here, the issuing judge attached the affidavit to the warrant as required by R.C. 2933.24(A) and Crim.R. 41(C). The affidavit indicates that it was sworn to in front of the issuing judge on November 6, 2001. The journal entry orders that the search occur within three days after issuance. The return of the warrant indicates that the search occurred on November 6, 2001. The documents were filed with the Chillicothe Municipal Court on November 7, 2001. Remy does not contend that the warrant was issued or the search occurred on a day other than November 6, 2001, does not assert that the warrant would not have been issued had the date been properly inserted on the journal entry, and does not point to any evidence of bad faith. Thus, we find no merit to Remy's contention that the faulty warrant required exclusion of the items seized in execution of the warrant.
 C. {¶ 30} Remy also asserts that the warrant was not properly executed. He notes that the search warrant was issued to Sheriff Ron Nichols, and that Ron Nichols was not personally present when the warrant was executed. However, Remy does not actually argue, let alone cite authority to support, that a warrant must be executed by the officer named in the warrant. In fact, a search warrant may be directed to a sheriff or chief of police but executed by any law enforcement officer holding the warrant.State v. Klein (Apr. 12, 1985), Wood App. No. WD-84-76; see, also, R.C. 2933.24 (A).
 {¶ 31} Remy also asserts that the officers executed the search with an overbroad scope. Specifically, Remy complains that the officers seized a computer, and later charged him with receiving stolen property with regard to the computer, when the warrant contains no mention of stolen property. Remy ignores the fact that the warrant specifically authorized the seizure of "computers, computer disks, tapes, or other storage devices, and the records contained therein or generated thereby * * *." Thus, the warrant specifically authorized the seizure of the computer. Additionally, Remy suffered no prejudice as a result of the seizure of the computer, because the State ultimately dropped the receiving stolen property charge.
 {¶ 32} Finally, Remy argues the warrant was not properly returned, "as nothing was brought before the issuing magistrate." However, the record contains a file-stamped copy of the return, dated November 6, 2001, and Remy attached a copy of the return to his brief. Thus, the record does not support Remy's contention that the officers did not properly return the warrant.
 {¶ 33} Because Remy's challenges to the warrant lack merit, we find that the trial court did not err in refusing to sustain his motion to suppress. Accordingly, we overrule Remy's second assignment of error.
 IV. {¶ 34} In his fourth assignment of error, Remy contends that the trial court committed prejudicial error by not suppressing the statements he made to law enforcement officers that violated his Miranda rights and that were not provided in compliance with Crim.R. 16.
 A. {¶ 35} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara
(1997), 124 Ohio App.3d 706, citing United States v. Martinez
(C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995), 73 Ohio St.3d 308, 314. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 36} Law enforcement officials are obligated to administerMiranda warnings only to those who are interrogated while "in custody." Oregon v. Mathiason (1977), 429 U.S. 492, 495. Within the Miranda context, "custody" is defined as a restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125. The issue of whether a suspect was "in custody" at the time of questioning is subject to de novo review. United States v.Salvo (C.A. 6, 1998), 133 F.3d 943, 948, citing Thompson v.Keohane (1995), 516 U.S. 99.
 {¶ 37} The temporary restraint of an individual, such as that required of individuals present at the scene during the execution of a search warrant, does not invoke the "full panoply of Fourth Amendment protections * * * for no actual arrest has occurred."State v. Schultz (1985), 23 Ohio App.3d 130, 135, citingFlorida v. Royer (1983), 460 U.S. 491. In Schultz, the defendant was present in a home that was searched for drugs pursuant to a warrant and detained in the home during the search. At one point, officers asked the defendant whether a particular coat belonged to him, and the defendant replied that it did. The defendant was arrested for drugs found in the coat.
 {¶ 38} On appeal, the court of appeals held that police were not required to administer Miranda warnings before they asked the defendant about the coat, because he was only in an intermediate level of detention similar to an on-the-scene investigation in a Terry stop. Schultz at 135, citing Terryv. Ohio (1968), 391 U.S. 1. Though it conceded that the detention was more than "brief," the court held that the detention merely amounted to general on-scene questioning, such as that described in Miranda as "a legitimate and necessary part of the fact-finding process undertaken by the police at the scene of the criminal activity." Schultz at 135-136. Thus, the detention incident to the search was not so custodial in character as to require the Miranda warnings. Id.
 {¶ 39} Here, as in Schultz, Remy was not under arrest at the time he answered the officers' questions regarding who had a key to the bedroom and to whom the bedroom belonged. Rather, he was under temporary restraint during the execution of the search warrant, just as the other individuals present at the scene were restrained but not in custody. The testimony from the motion to suppress hearing indicates that Remy was in the building when he answered the questions about the bedroom. He was not told he was under arrest until after officers discovered drugs in his bedroom. Additionally, the testimony indicates that he was handcuffed after he was removed from the building.[1]
Therefore, he was not in custody at the time he gave officers the key and admitted ownership of the bedroom. Accordingly, we find that the trial court did not err in ruling that Remy's statements about the bedroom were not obtained in violation of his right toMiranda warnings.
 B. {¶ 40} Remy next contends that the trial court should have suppressed his statements regarding his ownership of the bedroom because the State did not provide him with a written summary of his statement during discovery as required by Crim.R. 16(B)(1)(a)(ii). Additionally, Remy contends that he suffered prejudice as a result of the State's failure to provide him with a videotape of the search, in violation of Crim.R. 16(B)(1)(a)(i). Finally, Remy contends that he suffered prejudice as a result of the State's failure to provide him with the criminal records of a State's witness as required by Crim.R. 16(B)(1)(e).
 {¶ 41} Crim.R. 16(B)(1) requires the prosecuting attorney, upon motion of the defendant, to provide the defendant with copies of any written or recorded statements of the defendant (Crim.R. 16(B)(1)(a)(i)), written summaries of any oral statement made by a defendant (Crim.R. 16(B)(1)(a)(ii)), and the records of any witness whom the State intends to call at trial (Crim.R. 16(B)(1)(e)). The court, in its discretion, may prohibit the State from introducing material not disclosed in accordance with Crim.R. 16, or may make any other order it deems just under the circumstances. Crim.R. 16(E)(3); State v. Bidinost,71 Ohio St.3d 449, 456, 1994-Ohio-465. In determining whether a trial court has abused its discretion in dealing with Crim.R. 16 violations, we look to whether: (1) the violation was willful; (2) foreknowledge would have benefited the defendant; and (3) the defendant suffered prejudice as a result of the State's failure to disclose the information. State v. Parson (1983),6 Ohio St.3d 442, 445.
 {¶ 42} First, Remy contends that the State should have provided him with a written summary of the statements he made to law enforcement officers. The State must provide written summaries of statements given by defendants and co-defendants upon the written request of the defendant. Crim.R. 16; State v.DeLeon (1991), 76 Ohio App.3d 68, 77; State v. Gooden (1983),16 Ohio App.3d 153, 158. Here, it is not clear from the record whether the State did so. Both parties filed motions to compel and numerous discovery requests with the trial court. In his January 16, 2003 motion to compel discovery, Remy did not allege that the State had not provided a written summary of his statements. Additionally, it appears from the testimony and questions at the suppression hearing and the trial, as well as from the State's motion to compel discovery, that the State provided Remy with all police reports, including the notes of the officer who took Remy's statement, Detective Lowe.
 {¶ 43} Even assuming the State did commit a discovery violation by failing to provide Remy with a written summary of his statement, Remy waived the error by failing to bring the violation to the court's attention when he filed his motion to compel discovery. See Crim.R. 16(E)(3). Additionally, Remy had knowledge of the statement prior to trial because the statement was revealed in testimony during the hearing on the motion to suppress. Remy did not point to a place in the trial record where his alleged statements to police surprised him. Thus, Remy suffered no prejudice as a result of the alleged violation. Therefore, we cannot find that the trial court abused its discretion in refusing to suppress his statements based upon a discovery violation.
 {¶ 44} Next, with regard to Remy's contention that the State failed to provide a videotape of the search, the State contends that it is not aware of any videotape made of the search of Paul's Motor Sales. Although the inventory of the search lists a videotape, it is not clear whether this refers to a videotape made during the search or simply a videotape seized during the search. Remy does not specify how he believes information contained in a videotape of the search, if one exists, would benefit him. Thus, he has not alleged prejudice. Additionally, Remy does not specify what sanction he believes the trial court should have imposed as a result of the State's failure to provide him with this videotape. Because the record indicates no willful violation of Crim.R. 16(B)(1)(a)(i) and no prejudice suffered as a result of the alleged violation, we cannot say that the trial court abused its discretion in dealing with the alleged discovery violation.
 {¶ 45} Finally, Remy contends that the State failed to provide him with the felony criminal record of Hank Spencer, an individual present during the search, in violation of Crim.R. 16(B)(1)(e). Crim.R. 16(B)(1)(e) requires the State to provide the felony records of witnesses whom the State intends to call at trial. Here, although the State listed Hank Spencer as a potential witness, the State did not call Hank Spencer as a witness at trial. Moreover, the record reflects that Remy did not suffer any prejudice as a result of the State's failure to provide him with information concerning Hank Spencer's felony record. Specifically, the record reflects that Remy was aware of Hank Spencer's felony record at trial, as he attempted to introduce a certified copy of a journal entry containing the conviction of an individual named Hank Spencer. Therefore, he did not demonstrate that the trial court abused its discretion in dealing with the State's discovery violation.
 C. {¶ 46} In the body of his argument regarding his motion to suppress, Remy also notes that Detective Lowe testified that he could not remember: (1) what Remy said about his reading and writing skills before he signed the waiver of rights; (2) whether an officer gave Remy a copy of the search warrant; (3) whether he asked if Remy was on prescription medicine; (4) whether he contacted Diane Barrett, Remy's daughter and owner of the business, before the execution of the search warrant; and (5) who placed handcuffs on Remy. Remy also notes: (1) that he only went to eighth grade in school; (2) that the officers executing the search warrant took the VIN numbers of all the automobiles on the car lot; and (3) that no record was made of the proceeding to obtain the search warrant. Finally, Remy opines that "police officers arrest without probable cause many times." Remy does not cite any case law or attempt to attach any legal significance to these facts and opinions in the context of this assignment of error. Because Remy did not adequately address the issues raised by this list of items as required by App.R. 16(A), we decline to address them. See App.R. 12(A)(2).
 {¶ 47} In sum, we disagree with Remy's contention that the trial court committed prejudicial error by not suppressing his statements to law enforcement officers or statements and information that was not provided to him in discovery. Accordingly, we overrule Remy's fourth assignment of error.
 V. {¶ 48} In his sixth assignment of error, Remy contends that the trial court committed prejudicial error by permitting the jury to consider crack-cocaine and powder cocaine that was not properly qualified and quantified. Specifically, Remy states that he was indicted only for possession of crack-cocaine, yet the State presented evidence of both cocaine and crack-cocaine in determining the weight to be assessed to him as being in excess of twenty-five grams. Additionally, Remy asserts that the State failed to prove the purity of the substances it determined contained crack-cocaine in assessing a weight of greater than twenty-five grams to him.
 {¶ 49} The indictment alleged that Remy possessed crack-cocaine in violation of R.C. 2925.11, but does not mention powder cocaine. R.C. 2925.11(C)(4) states, "[i]f the drug involved in the violation is cocaine or a compound, mixture,preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." (Emphasis added.) Thus, the statutory provision cited in the indictment does not distinguish between types of cocaine.
 {¶ 50} In determining the weight of cocaine, "the content or purity of cocaine is immaterial so long as there is any amount
of cocaine in the compound or substance." State v. Brown
(1995), 107 Ohio App.3d 194, 202, quoting State v. Neal (June 29, 1990), Hancock App. No. 5-89-6, (emphasis in original.) The State need not conduct qualitative analysis to determine the purity of the cocaine. State v. Fuller (Sept. 26, 1997), Hamilton App. No. C-960753. "The statute clearly indicates that any amount of cocaine is sufficient." Brown at 202.
 {¶ 51} The State's expert witness, forensic scientist Keith Taggart of BCI, testified that "crack-cocaine" is the street terminology for cocaine in its base form. He also testified that baking soda is frequently used to convert cocaine from the hydrochloride form to the base form. Additionally, he testified that he does not analyze rocks of crack-cocaine for purity, and that he has no way of telling the weight of baking soda as opposed to the weight of cocaine in a given amount of crack-cocaine.
 {¶ 52} Taggart testified that the substance under the mattress of Remy's bed had a weight of 11.02 grams and contained cocaine base. He testified that the substance found in the suspended ceiling of Remy's bedroom weighed 18.56 grams and contained cocaine base. Additionally, the substance found in the dresser at the foot of Remy's bed weighed .94 grams and contained cocaine base, the substance found in Remy's bathrobe weighed .37 grams and contained cocaine base, and the substance found in Remy's bed weighed .49 grams and contained cocaine base.
 {¶ 53} Remy does not specify which of these samples he believes contained powder cocaine as opposed to crack-cocaine or identify where in the record the State introduced evidence of cocaine that was not crack-cocaine. Taggart's testimony constitutes some competent credible evidence that the substances under Remy's mattress and in his bed, his ceiling, his dresser, and bathrobe were crack-cocaine rather than another type of cocaine. Thus, even if we limit the State's proof to cocaine specifically identified as crack-cocaine, Taggart's testimony establishes possession of greater than twenty-five grams. Additionally, pursuant to R.C. 2925.11 and Brown, supra, the amount of baking soda or other substances mixed with the cocaine is immaterial. Thus, Remy's allegation that the purity of the cocaine was not established is inapposite. Accordingly, we overrule Remy's sixth assignment of error.
 VI. {¶ 54} In his third assignment of error, Remy contends that his conviction is against the manifest weight of the evidence. In particular, Remy contends that the State did not present any evidence that directly connected him to the cocaine found in the ceiling of his bedroom.
 {¶ 55} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; Martin, 20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988),38 Ohio St.3d 56, paragraph two of the syllabus. An appellate court may conclude that a verdict is against the manifest weight of the evidence, even when the verdict is supported by sufficient evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214.
 {¶ 56} Here, Remy was charged with and convicted of possession of cocaine. "Possession" means having "control over a thing or substance." R.C. 2925.01(K). Possession can be actual or constructive. State v. Wolery (1976), 46 Ohio St.2d 316, 329;State v. Barr (1993), 86 Ohio App.3d 227, 235. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. State v.Hankerson (1982), 70 Ohio St.2d 87, at the syllabus.
 {¶ 57} Here, the drugs were found in the ceiling of the bedroom at Paul's Motor Sales. As we determined when we considered Remy's fourth assignment of error, Remy's statements to police that he had the key to the bedroom and that the bedroom was his were properly admitted into evidence. Remy unlocked the bedroom. The facts that the bedroom was locked, that Remy had the key, and that Remy stated that the bedroom was his, constitute substantial evidence that Remy exercised dominion and control over the drugs found in the bedroom ceiling. Based on this evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in concluding that Remy possessed the drugs. Accordingly, we overrule Remy's third assignment of error.
 VII. {¶ 58} In his fifth assignment of error, Remy contends that the trial court erred in not sentencing him to the statutory minimum sentence. The trial court sentenced Remy to four years in prison rather than the statutory minimum of three years. The conviction is Remy's first felony conviction, and he has not previously served a prison term.
 {¶ 59} R.C. 2953.08(A)(4) provides that a defendant who is convicted of a felony may pursue an appeal on the ground that the sentence is contrary to law. The appellate court may modify the sentence upon clearly and convincingly finding that the sentence is not supported by the record, the sentence erroneously includes a prison term, or the sentence is contrary to law. R.C.2953.08(G)(1)(a)-(d). In applying this standard of review, we do not substitute our judgment for that of the trial court. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors, (2) made the required findings, (3) relied on substantial evidence in the record supporting those findings, and (4) properly applied the statutory guidelines. State v. Persons (Apr. 26, 1999), Washington App. No. 98CA17, citing Griffin Katz, Ohio Felony Sentencing Law (1999) 542-547, Section 9.16-9.20.
 {¶ 60} "Minimum sentences are favored for first-time imprisonment." State v. Edmonson (1999), 86 Ohio St.3d 324,325. R.C. 2929.14(B) requires a trial court to impose a minimum sentence for first-time imprisonment, unless it "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C.2929.14(B)(2); see, also, State v. Jones (2001),91 Ohio St.3d 391, 398. The trial court is not required to "give its reasons
for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) Edmonson
at syllabus. Nor is the court required to use the "talismatic" words contained in the statute. See State v. Mirmohamed (1998),131 Ohio App.3d 579, 584. However, the court must indicate on the record that it first considered imposing the minimum sentence and then decided to depart from the minimum based on one or both of the permitted reasons. Edmonson at 328; Mirmohamed at 584.
 {¶ 61} Here, the trial court found at the sentencing hearing "that the very minimum sentence would demean the seriousness of the offense." Additionally, the trial court specifically stated in its judgment entry that "the shortest prison term will demean the seriousness of the Defendant's conduct." Thus, the court indicated on the record that it considered the minimum sentence before deciding to depart from it. Therefore, the sentence is not contrary to law. Accordingly, we overrule Remy's fifth assignment of error.
 VIII. {¶ 62} In his seventh assignment of error, Remy contends that he suffered prejudice due to the trial court allowing the State to mislead the jury during closing arguments. He contends that the State misled the jury by: (1) referring to Paul's Motor Sales as Remy's business, when the business is in fact owned by Remy's daughter, Diane Barnett; (2) referring to the 18.65 gram rock of crack-cocaine found in the ceiling as a "boulder;" (3) referring to both crack-cocaine and powder cocaine; and (4) noting that Remy did not present evidence of any alternative theory by which cocaine could have ended up in Remy's ceiling. Remy does not cite any legal authority in support of this assignment of error. At trial, the court overruled Remy's objection to the characterization of the business ownership and sustained his objection to the State's reference to a failure to present evidence of alternative theories. Remy did not object to the use of the word "cocaine" versus "crack-cocaine" or to the characterization of the 18.65 gram rock as a boulder.
 {¶ 63} To determine whether comments made by a prosecutor during closing argument amount to misconduct warranting a mistrial, we must examine "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Smith (1984), 14 Ohio St.3d 13, 14. In order for a defendant to successfully move for a new trial based upon prosecutorial misconduct, the defendant must show that the prosecutor's remarks deprived the defendant of a fair trial.State v. Keenan (1993), 66 Ohio St.3d 402, 405; State v.Maurer (1984), 15 Ohio St.3d 239, 266. It must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty. Smith at 15.
 {¶ 64} Prosecutors are afforded a certain degree of latitude in their closing arguments. Keenan at 409. In evaluating a closing argument, we do not take the prosecutor's comments out of context or give them their most damaging meaning. State v. Hill
(1996), 75 Ohio St.3d 195, 203, citing Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647. "A closing argument must be viewed in its entirety to determine prejudice." Hill at 204, citing State v. Byrd (1987), 32 Ohio St.3d 79, 82. We review remarks to which the defendant failed to object only for plain error. Crim.R. 52(B); State v. Slagle (1992),65 Ohio St.3d 597, 604; State v. Lampkin (Dec. 27, 1999), Scioto App. No. 99CA2635.
 {¶ 65} The transcript of the State's closing argument reveals that the State did not make an improper or misleading statement with regard to the ownership of Paul's Motor Sales. Rather, the State argued that the evidence proved beyond a reasonable doubt that Remy controlled the business. Specifically, the State listed the facts that Remy owns the property that the business sits on, that the business is named "Paul's Motor Sales," that Remy's first name is Paul, and that the business name does not include a reference to Remy's daughter. Because the record contains evidence of each of these facts, we find that the State's remark was not improper.
 {¶ 66} Likewise, the State's reference to Remy possessing both powder and crack-cocaine is supported by evidence. The record contains testimony that crack-cocaine is made from powder cocaine, and hence evidence of both is relevant to prove that Remy possessed crack-cocaine. Additionally, Remy did not object to the evidence that he possessed powder cocaine when it was presented in testimony or during closing arguments. Because the evidence the State referred to in closing arguments is contained in the record, is relevant, and was not objected to by Remy, the comment was not improper.
 {¶ 67} Remy's objection to the State's characterization of the 18.65 gram rock of crack-cocaine as a "boulder" is also without merit. Because Remy did not object to the characterization, we review it only for plain error. The record contains testimony describing the 18.65 gram piece of cocaine as a "rock" and as "large." The remark was improper to the extent that the comment conveyed the prosecutors' opinion, but only marginally so, since the opinion was based on evidence presented at trial. See State v. Clemons (1998), 82 Ohio St.3d 438, 452, citing State v. Tyler (1990), 50 Ohio St.3d 24, 40-41. We find that the State did not exceed the wide degree of latitude afforded in closing arguments, and that any error did not rise to the level of plain error.
 {¶ 68} Finally, Remy contends that the State's argument that Remy did not present any evidence of an alternative theory by which cocaine could have ended up in Remy's ceiling deprived him of his right against self-incrimination. Specifically, in closing argument the State noted that Remy did not present any testimony from a mechanical or industrial engineer to support a theory that someone could have gotten through the rafters to stash the cocaine in the ceiling of Remy's bedroom without Remy's knowledge. The trial court sustained Remy's objection to this comment and gave a curative instruction. However, "[t]he comment that a witness other than the accused did not testify is not improper, State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case." Clemons, supra at 452, citing State v. Willias (1986), 23 Ohio St.3d 16, 19-20, and State v. Bies (1996), 74 Ohio St.3d 320, 326. Thus, the comment was not improper.
 {¶ 69} Accordingly, we overrule Remy's seventh assignment of error.
 IX. {¶ 70} In his eighth assignment of error, Remy contends that the trial court erred when it would not allow him to introduce evidence of the felony record of an individual who was present during the execution of the search warrant at Paul's Motor Sales. Remy contends that allowing the jury to learn of Hank Spencer's felony record would have given the jury an alternative theory of who owned the crack-cocaine found during the execution of the warrant.
 {¶ 71} The record reflects that the court did not rule that Remy could not introduce evidence of Hank Spencer's prior convictions. Rather, the court merely ruled that Remy could only introduce certified copies of the journal entries containing Hank Spencer's convictions if he could also introduce evidence that the Hank Spencer named in the journal entries was the same individual as the Hank Spencer present at the scene. Remy notes that the trial judge in this case was the same judge who entered Hank Spencer's convictions. However, this fact is inapposite; the trial judge is not a witness, and, in any event, stated on the record that he was not present at the scene of the search and did not know if the two Hank Spencers were one and the same.
 {¶ 72} Because the trial court ruled that Remy could introduce the judgment entries containing Hank Spencer's convictions if he first laid a foundation for their relevancy, Remy's assignment of error is without merit. The trial court did not prevent Remy from introducing evidence of Hank Spencer's convictions. Accordingly, we overrule Remy's eighth assignment of error.
 X. {¶ 73} In his ninth assignment of error, Remy asserts that the trial court committed prejudicial error when it allowed a violation of the separation of witnesses rule. Specifically, Remy asserts that the trial court prejudiced him by permitting Detective Lowe to remain in the courtroom at the counsel table and allowing Detective Lowe to testify last in the State's case.
 {¶ 74} Evid.R. 615 governs the trial court's duty to separate witnesses. Evid.R. 615(B) provides, "[t]his rule does not authorize exclusion of * * * an officer or employee of a party which is not a natural person designated as its representative by its attorney * * *." It is well settled that "[i]n a criminal prosecution, a representative of the law enforcement agency handling the prosecution — even if the representative is a witness — may assist the prosecutor during trial and may remain in the courtroom although a separation of witnesses has been ordered." State v. Fuller (Sept. 26, 1997), Hamilton App. No. C-960753, citing State v. Turner (Feb. 27, 1997), Allen App. No. 1-96-27; United States v. Wells (C.A. 6, 1971),437 F.2d 1144; State v. Payne (Mar. 1, 1996), Greene App. No. 95-CA-49;State v. Gleason (1989), 65 Ohio App.3d 206; Strongsville v.Pfister (Nov. 19, 1992), Cuyahoga App. No. 63012. Matters surrounding the separation of witnesses are within the discretion of the trial court. Gleason at 209, citing In re UnauthorizedPractice of Law (1963), 175 Ohio St. 149, 154; Oakwood v.Makar (1983), 11 Ohio App.3d 46, 48. Although it may be within the trial court's discretion to require a party's designated representative to testify first, "it is difficult to conceive of a situation in which the failure to do so would be reversible error." Fuller, supra, quoting United States v. Martin
(C.A. 6, 1990), 920 F.2d 393, 397.
 {¶ 75} In this case, the State designated Detective Lowe as its representative. Therefore, the State was entitled to have Detective Lowe remain in the courtroom despite the separation of witnesses order. Remy has not demonstrated that the trial court acted arbitrarily, unreasonably or unconscionably in permitting Detective Lowe to remain in the courtroom and testify last in the State's case. Although the trial court could have ordered Detective Lowe to testify earlier, we cannot say that the trial court abused its discretion in failing to do so. Accordingly, we overrule Remy's ninth assignment of error.
 XI. {¶ 76} In his tenth assignment of error, Remy contends that the trial court committed prejudicial error by overruling his motion for a new trial without first holding an oral hearing. Remy contends that Crim.R. 33(A)(6) requires the trial court to hold an oral hearing whenever a motion for a new trial based upon newly discovered evidence is filed.
 {¶ 77} Any decision on a motion for a new trial is within the discretion of the trial court. State v. Scheibel (1990),55 Ohio St.3d 71, paragraph one of the syllabus, certiorari denied (1991), 499 U.S. 961, 111 S.Ct. 1584; Toledo v. Easterling
(1985), 26 Ohio App.3d 59, 61. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Clark (1994), 71 Ohio St.3d 466, 470;State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 78} Crim.R. 33(A)(6) provides that newly discovered evidence may provide grounds for a new trial when the evidence is material to the defense and "the defendant could not with reasonable diligence have discovered and produced [the evidence] at the trial." Crim.R. 33(A)(6) goes on to provide, "[w]hen a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case."
 {¶ 79} The procedure outlined in Crim.R. 33 allows for a non-oral hearing on opposing affidavits, and does not require the court to hear live-witness testimony. State v. Perotti, Scioto App. No. 99CA2672, 2001-Ohio-2677. The trial court's decision whether to hold a hearing will not be disturbed on appeal absent an abuse of discretion. State v. Smith (1986),30 Ohio App.3d 138, 139; Toledo v. Stuart (1983), 11 Ohio App.3d 292, 293;State v. Downey (Sept. 3, 1991), Butler App. No. CA90-09-200. Where the defendant's motion fails to demonstrate grounds for a new trial based upon newly discovered evidence, the trial court may in its discretion summarily deny the motion without a hearing. State v. Elliott, Hamilton App. No. C-020736, 2003-Ohio-4962 at ¶ 14; State v. Ravner (Sept. 27, 2000), Fairfield App. No. 00CA13, distinguishing State v. Wright
(1990), 67 Ohio App.3d 827.
 {¶ 80} Crim.R. 33(A)(6) plainly provides that newly discovered evidence is evidence "which the defendant could not with reasonable diligence have discovered and produced at the trial." Here, Remy attached an undated letter purportedly written by Tonya Sue Perry to his motion. Remy relies upon the letter as a confession by Perry that the cocaine in his ceiling belonged to her and another woman, Dorothy Spencer. However, the letter also states that Perry and Spencer waited for Remy to come home before stashing the cocaine in his ceiling, and that he provided them with the plastic bag to hold the cocaine. Additionally, the letter states that Perry and Spencer informed Remy that the cocaine stashed in the ceiling was theirs approximately four weeks after the November 6, 2001 raid. Thus, even if the letter is to be believed, it does not contain evidence that was discovered after the trial. Remy did not subpoena Perry or Spencer to appear as witnesses at trial. Thus, Remy did not exercise diligence to attempt to present evidence at trial that the cocaine belonged to Perry and Spencer.
 {¶ 81} Because Remy's motion did not reveal any newly discovered evidence that Remy could not, with adequate diligence, have discovered prior to trial and presented at trial, Remy did not state adequate grounds for a new trial. Thus, we cannot say that the trial court abused its discretion by denying Remy's motion without a hearing. Accordingly, we overrule Remy's tenth assignment of error.
 XII. {¶ 82} In sum, we find that each of Remy's ten assignments of error are without merit. Accordingly, we overrule Remy's assignments of error, and we affirm the judgment of the trial court.
Judgment Affirmed.
Abele, J. and Grey, J.: Concur in Judgment and Opinion.
Lawrence Grey, Retired Judge of the Ohio Court of Appeals, sitting by assignment.
[1] During oral argument, Remy asserted that the bedroom key questions arose after he was handcuffed. However, Remy does not make this allegation in his brief, and the hearing transcript does not support such an assertion. In any event, we note that the defendant in Schultz was handcuffed during the search for the safety of the officers executing the warrant. The court nonetheless found that the detention did not rise to the level of an arrest. Schultz at 135.